**MOLECULAR TECHNOLOGY CORPORATION, an Ohio corporation; Jafar Behbehani and Michael May, Plaintiffs–Appellants (89–1842), Plaintiffs–Appellees (89–1758),**

v.

**Al VALENTINE, Defendant–Appellant (89–1758), Defendant–Appellee (89–1842),**

**Donovan C. Snyder; Moss and Wilkins, Defendants–Appellants (89–1843), Defendants–Appellees (89–1842),**

**Jack Hunter; Jim Fors, Defendants–Appellees,**

**First National Monetary Group, Inc.; First National Securities Corporation, Defendants.**

Nos. 89–1758, 89–1842 and 89–1843.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 7, 1990.

Decided Feb. 11, 1991.

Ernest R. Bazzana, Michael J. Barton, Mark L. McGowan (argued), Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, Detroit, Mich., for plaintiffs-appellees.

Walter L. Baumgardner, Jr. (argued), Musilli & Baumgardner, St. Clair Shores, Mich., for Al Valentine.

John L. Hopkins, Jr. (argued), Judith A. Friday, Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald, Southfield, Mich., for Donovan C. Synder and Moss and Wilkins.

Jack Hunter, Southfield, Mich., pro se.

Jim Fors, Bradenton, Fla., pro se.

Before SUHRHEINRICH, Circuit Judge; WELLFORD *, Senior Circuit Judge; BELL **, District Judge.

SUHRHEINRICH, Circuit Judge.

This appeal arises out of a securities litigation case brought by purchasers of convertible debentures issued by SDE Robotics and Automation Company ("SDE") in 1983 for losses suffered as a result of SDE's April 1984 bankruptcy. The purchasers, Molecular Technology Corporation ("MoTech"), Michael May, and Jafar Behbehani, alleged, *inter alia*, violations of federal securities laws, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5 ("section 10(b)/rule 10b–5"), Michigan securities laws, Mich.Comp.Laws §§ 451.501–818 (Michigan's "Blue Sky" law), and state common law claims of negligent misrepresentation. Defendants included Al Valentine, Jim Fors, Keith Crawford and Vincent Swig (officers and directors of SDE), DeWorth Williams, David Williams and David Girkis (directors of SDE), Jack Hunter (a broker and salesman for the debenture offering), Donovan C. Snyder and his Utah law firm, Snyder, Moss & Wilkins, hereinafter collectively referred to as "the Snyder defendants" (attorneys for defendants DeWorth Williams, David Williams, and Al Valentine) and third party defendant Robert Currie, through his law firm Currie, Streper, Haddrill & Segferth, P.C. (SDE's corporate counsel in Michigan).[1]

As of 1982, State Die and Engineering, Inc. ("State Die") was a private Michigan corporation co-owned by Al Valentine and Chester Wentzal. For the nine months prior to December 31, 1983, State Die's financial statements showed $2.4 million dollars in sales of tool and die products and $250,000 in sales of robotics products. At the end of the 1982, co-owner Chester Wentzal left State Die and took most of the tool and die business with him, causing significant financial problems for State Die by the corporate fiscal year ending August 31, 1983.

On August 11, 1983, Valentine, who became sole owner of State Die after Chester Wentzal left the company, and DeWorth Williams, chief stockholder in Extra Production, Inc. ("Extra Production"), employed Utah attorney Donovan Snyder to effect a shell transaction,[2] a merger of the privately owned State Die with the defunct public "shell" corporation Extra Production. After terms of the proposed merger were discussed, Valentine and Williams signed an agreement drawn up by Snyder which merged State Die with Extra Production, resulting in the formation of SDE.

In August, 1983, SDE's corporate counsel in Michigan, Robert Currie, prepared a convertible debenture private placement offering circular for SDE which set forth: the purpose and terms of the debenture offering; a proposed use of the proceeds of the offering; a summary of business conducted by SDE; a list of the directors and officers of SDE with each person's resume; and State Die's financial balance sheets for the years 1982–85. This original offering circular was prepared utilizing information provided by various people, including SDE director Jim Fors and SDE officer David Birkis. Currie later sent the offering circular to Snyder and requested that he review the statements concerning the August 11, 1983 merger. Snyder reviewed the original offering circular, edited several paragraphs, made handwritten insertions and,

---

* The Honorable Harry W. Wellford assumed senior status January 21, 1991.

** The Honorable Samuel H. Bell, United States District Judge for the Northern District of Ohio, sitting by designation.

1. On March 6, 1989, plaintiffs' claims against defendants David Girskis, Vincent Swick a/k/a Vincent Swig, David Williams, and DeWorth Williams were dismissed with prejudice by order of the district court. Further, third party defendants Robert Currie and Currie, Streper, Haddrill & Seyferth, P.C., were no longer parties to this litigation at the time the jury verdict was entered, although it is unclear from this record when and on what basis they were dismissed.

2. A shell transaction is a shortcut method of turning a private company into a public company, i.e., into a company with stock that can be publicly traded in the over the counter ("OTC") market. Normally, "going public" is a long and involved process involving supervision by the Securities and Exchange Commission and other government agencies. Although a shell transaction largely avoids this process and has a high potential for abuse, the transaction itself is not inherently illegal.

on September 20, 1983, returned the edited circular to Currie. An amended private placement offering circular was ultimately prepared, incorporating some of the changes suggested by Snyder, and was made available to investors.

After the shell transaction was completed, DeWorth Williams asked Snyder to review an information statement prepared for the purpose of marketing SDE's stock in the OTC market.[3] Using information provided in part by DeWorth Williams, Snyder updated the information statement to insert the corporation's new name and current officers, the number of shares outstanding, the history of the corporation, the nature of the products and services performed by SDE, and the description of SDE's facilities. No evidence was introduced at trial indicating that the information statement partially prepared by Snyder was ever transmitted to a broker or made available to the public.

In September, 1983, Snyder reviewed the corporate and transfer agent's records and prepared an opinion letter to SDE concerning the tradeability of SDE's stock in the OTC market. Snyder's only other involvement was a response to a telephone inquiry in which he advised Fors that sales to non-United States citizens were not subject to the $500,000 limitation under federal securities laws.

On September 2, 1983, plaintiff Michael May, acting individually and as the president of MoTech, purchased $8,000 worth of SDE debentures for himself and $25,000 worth of debentures for MoTech. May testified that he received the original offering circular before making this investment for himself and MoTech. In October, 1983, and on December 9, 1988, May purchased for himself an additional $12,000 and $5,000 worth of debentures, respectively. May testified that he received and relied on the amended offering circular prior to his third purchase on December 9, 1988.

May suggested an investment in SDE to his friend and MoTech business associate, Behbehani, in November 1983. On December 12, 1983, Behbehani purchased $500,000 worth of SDE debentures. Behbehani testified that he had a copy of the amended offering circular at the time he made his investment and that he relied on the circular and the advice of May in making his investment decision.

In April 1984, SDE went bankrupt, resulting in the entire loss of MoTech's, May's and Behbehani's debenture investments. Thereafter, plaintiffs brought suit against defendants under various federal and state laws for losses incurred as a result of their investments in SDE. On March 27, 1989, after a three week trial, the jury returned a verdict in favor of plaintiffs. As to liability, the jurors found, *inter alia*, that: 1) Fors had violated section 10(b)/rule 10b–5 as to all plaintiffs while the Snyder defendants had violated section 10(b)/rule 10b–5 as to Behbehani and MoTech only; 2) Fors, Valentine and the Snyder defendants were liable for negligent misrepresentation to Behbehani and MoTech, but Behbehani and MoTech had been seventy percent (70%) comparatively negligent as to these defendants; and 3) Fors and Valentine had violated Michigan's securities laws, for which Fors was liable to all plaintiffs, and for which Valentine was liable to Behbehani and MoTech.

Without the knowledge or consent of the court or the attorneys, the jurors modified the verdict form and supplemented it with a chart purporting to allocate plaintiffs' damages among the various defendants on the various claims. (The verdict form and supplemental chart are attached as Appendix A). The altered verdict form awarded Behbehani $308,000 ($244,000 from Fors and $64,000 from the Snyder defendants) and MoTech $24,000 ($18,000 from Fors and $6,000 from the Snyder defendants) for violation of section 10(b)/rule 10b–5. Regarding the negligent misrepresentation claims, Behbehani was awarded $281,000 ($116,000 from Fors, $67,000 from the Snyder defendants, and $98,000 from Valen-

---

**3.** The information statement is also referred to by the parties as the "due diligence" statement. The information contained therein is required to be disclosed to investors under Federal Securities Regulation 240.15c2–11.

tine) and MoTech was awarded $29,000 ($10,000 from Fors, $9,000 from the Snyder defendants, and $10,000 from Valentine). The verdict also indicated that plaintiffs MoTech and Behbehani were seventy percent (70%) comparatively negligent. After the parties post trial motions were decided by the district court, the Snyder defendants, Valentine and plaintiffs Michael May, MoTech and Jafar Behbehani appealed. These appeals have been consolidated for consideration by this Court.

■ We hold that it was reversible error for the district court to accept a verdict with inconsistent findings and misapplications of the jury instructions, and which awarded excessive damages. We further hold that a judgment notwithstanding the verdict ("JNOV") should have been granted in favor of the Snyder defendants on MoTech's negligent misrepresentation claim since there was no showing that MoTech received or relied on the amended offering circular in making its investment decision. Thus, we reverse and remand this case for new trial on the remaining claims, consistent with this opinion.

## A. Snyder Defendants' Motions for a Directed Verdict and JNOV

The Snyder defendants appeal from a denial of their directed verdict and JNOV motions as to the negligent misrepresentation and section 10(b)/rule 10b–5 claims. The Snyder defendants also argue that plaintiffs' expert witness testimony concerning the requirements of federal securities laws was improper and resulted in juror confusion during deliberations.

### 1. *Negligent Misrepresentation*

The Snyder defendants contend that the district court's denial of their motion for a directed verdict and JNOV on the claim of negligent misrepresentation should be re-

versed since no reasonable juror could have found either a duty owing to plaintiffs or reasonable reliance ("proximate cause") by plaintiffs on the amended offering circular. In reviewing a denial of a directed verdict or JNOV on a state law claim, this court must determine whether the party opposing the motion has failed to present sufficient evidence upon which reasonable minds can differ. *Jenkins v. Southeastern Michigan Chapter, American Red Cross*, 141 Mich.App. 785, 792, 369 N.W.2d 223, 231 (1985); *Snider v. Bob Thibodeau Ford, Inc*, 42 Mich.App. 708, 712, 202 N.W.2d 727, 731 (1972).

Concededly, there has been little case law development of the tort of negligent misrepresentation since the Michigan Supreme Court recognized it as a viable cause of action in *Williams v. Polgar*, 391 Mich. 6, 215 N.W.2d 149 (1974). To fill this perceived void, the parties have indiscriminately cited case law from other states which also recognize a cause of action for negligent misrepresentation. Because *Polgar* adequately resolves the issues presented in this case, we find that the district court's reliance on non-Michigan case law was inappropriate.

The precise issue presented in *Polgar* was whether an abstractor owed a duty of care to those he knew or reasonably could foresee would rely on information which he provided in an abstract of title. *Polgar*, 391 Mich. at 9–10, 215 N.W.2d at 152–53. Rejecting an analysis based on fraud, warranty, or strict liability, and without limiting its holding to a particular group of professionals,[4] the court reiterated the well-developed negligence rule that a defendant owes a duty of care to all those who are foreseeable as a potential class of injured persons. *Id.*

■ In this case, instead of instructing the jury on the four traditional elements of

---

**4.** In *Friedman v. Dozorc*, 412 Mich. 1, 312 N.W.2d 585 (1981), the Michigan Supreme Court addressed the issue of whether an attorney may be held accountable to an adversarial party on a theory of negligence in bringing a law suit. The court ultimately held that: 1) public policy precluded a finding of duty of care owing to an attorney's opponent in litigation;

and 2) the adversarial nature of our legal system precluded a finding of reasonable reliance on the part of an opponent. However, the *Friedman* court expressly declined to address the issue presented in this case, namely, whether an attorney may be found negligent to third parties who are not adversaries in litigation. *Id.* at 29, 312 N.W.2d at 613.

negligence—duty, breach of duty, proximate cause and damages—the district court gave a "hybrid" instruction, incorporating various elements of negligence, fraud and contract law. We find two substantial errors in the district court's jury instructions regarding the element of duty. First, the district court instructed the jury that some type of special relationship must exist between the parties in order to find a duty owed to the plaintiffs by defendants.[5] However, *Polgar* does not require that the plaintiff have "a link ... such as privity, a bond approaching privity or a fiduciary relationship" with the defendant in order for a duty of reasonable care to exist. Second, that part of the instruction which limits liability to those persons to whom the defendant "knows the information will be shown" stands in direct contradiction to the holding in *Polgar*. *Polgar* imposes a duty in favor of all those third parties who defendant knows will rely on the information *and* to third parties who defendant should reasonably foresee will rely on the information. *Id.* at 9–10, 215 N.W.2d at 152–53.

■ Snyder testified that he received the initial offering circular from Currie, SDE's corporate counsel, for comment and revision. Snyder reviewed and amended portions of the offering circular and returned it to Currie. The September 20, 1983 cover letter from Snyder to Currie, attached to the amended circular, stated: "The Amended Circular should be presented to each potential investor including any who have already subscribed for the debentures." Viewing the evidence in the light most favorable to the plaintiffs, and without even considering Snyder's further involvement with the SDE shell transaction, a reasonable juror could conclude that Snyder knew or should have known that investors such

as the plaintiffs would be shown the amended offering circular.

■ The Snyder defendants next argue that because two of the debenture purchases were not made in reasonable reliance on any statements made by Snyder, plaintiffs have failed to establish proximate cause. Those purchases are: (1) MoTech's purchase of SDE debentures on September 2, 1983; and (2) Behbehani's purchase of SDE debentures in November, 1983. We find that JNOV should have been entered in favor of the Snyder defendants on MoTech's negligent misrepresentation claim. The president of MoTech, Michael May, testified that he had not reviewed the amended offering circular when he made the $25,000 purchase of debentures for MoTech on September 2, 1983. Further, there is no evidence in the record which could reasonably support an inference that MoTech purchased debentures as a consequence of any statement or document arguably attributable to Snyder other than the amended offering circular.[6] In sum, there is no actual causation, let alone proximate causation, between any statements and/or omissions by Snyder and MoTech's purchase of SDE debentures.

■ We reach a different result, however, with respect to Behbehani's purchase of debentures. In November, 1983, May suggested to Behbehani that he invest in SDE. May testified that he gave Behbehani all the information which he had received from defendants concerning SDE, including the amended offering circular partially edited by Snyder. Behbehani testified both on direct and cross-examination that, in making his decision to purchase $500,000 worth of debentures, he relied upon the amended offering circular in his possession. We find that the foregoing testimony

---

5. In charging this instruction, the district court incorrectly relied on *Law Offices of Lawrence J. Stockler, P.C. v. Rose,* 174 Mich.App. 14, 436 N.W.2d 70 (1989). The *Stockler* court quoted the restrictive "privity" test found in section 552 of the Restatement (Second) Torts but refused to consider whether it applied in Michigan. *Id.* at 37, 436 N.W.2d at 103.

6. The district court found, in considering defendants' motion for a directed verdict, that there

was absolutely no evidence introduced which indicated that the information/due diligence statement, partially prepared by Snyder, ever reached a single broker or investor. We agree with the district court's finding and, thus, refuse to consider plaintiffs' present argument that the information/due diligence statement was somehow relied upon by any of the plaintiffs in making their debenture purchases.

presented a triable fact issue as to whether the amended offering statement was the proximate cause of Behbehani's purchase of $500,000 worth of debentures in November, 1983. *Cf. Derbeck v. Ward*, 178 Mich. App. 38, 443 N.W.2d 812 (1989) (proximate cause may be established by showing a substantial relationship between two events).

### 2. *Section 10(b)/Rule 10b–5*

■ The Snyder defendants argue that they should have been granted a directed verdict or JNOV on MoTech's and Behbehani's section 10(b)/rule 10b–5 claim since no reasonable juror could have found that Snyder owed plaintiffs a duty to disclose information or that plaintiffs justifiably relied on any statements or omissions by Snyder. In reviewing a denial of a directed verdict or JNOV on a federal claim, we must determine "whether without weighing the credibility of the witnesses or considering the weight of the evidence, there is substantial evidence from which the jury could find in favor of the party against whom the motion is made." *Brandenburg v. Cureton*, 882 F.2d 211, 213 (6th Cir.1989) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 418 (6th Cir.), *cert. denied*, 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984)).

Section 10(b)/rule 10b–5 creates three separate bases of liability, each of which is alleged in this case:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5; *see also* § 15 U.S.C. 78j(b). Section 10(b)/rule 10b–5 is not limited to claims based on misrepresentations and omissions but, rather, has been applied to a wide variety of fraudulent schemes:

[The] cases forcefully reflect the principal that "[§] 10(b) must read flexibly, not technically and restrictively" and that the statute provides a cause of action for any plaintiff who "suffer[s] an injury as a result of deceptive practices touching its sale [or purchase] of securities...."

*Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 475–76, 97 S.Ct. 1292, 1301–02, 51 L.Ed.2d 480 (1977) (citations omitted).

Plaintiffs allege that the Snyder defendants owed them a duty to disclose material information to investors such as the plaintiffs either as a primary or a secondary violator of section 10(b)/rule 10b–5. This court applies a "direct contact" test for determining whether a defendant is liable as a primary violator.

[O]nly those individuals who had an *affirmative obligation* to reveal what was allegedly omitted can be held as primary participants in the alleged deception ... A person undertaking to furnish information which is misleading because of a failure to disclose a material fact is a primary participant. Conversely, a person who does not undertake to furnish any information, and who is not aware of what information has been furnished, is under no duty to disclose material information in his possession.

*SEC v. Washington County Utility Dist.*, 676 F.2d 218, 223 (6th Cir.1982) (citations omitted) (emphasis in original); *see also SEC v. Coffey*, 493 F.2d 1304, 1315 (6th Cir.1974), *cert. denied*, 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975). Secondary liability, on the other hand, may be premised on any one of several theories, including aiding and abetting a securities violation. *Herm v. Stafford*, 663 F.2d 669, 684 (6th Cir.1981).

[A] person may be held as an aider and abettor only if some other party has committed a securities law violation, if the accused party had general awareness that his role was part of an overall activi-

ty that is improper, and if the accused aider and abettor knowingly and substantially assisted the violation.

*Washington County*, 676 F.2d at 224 (quoting *Coffey*, 493 F.2d at 1316).

Applying section 10(b)/rule 10b–5 principles to Snyder's involvement with the SDE shell transaction leads us to conclude that sufficient evidence was introduced to create a triable fact issue for the jury. Snyder drafted the merger agreement between State Die and Extra Production at the August 11, 1983 meeting between himself, Al Valentine and DeWorth Williams. At that meeting, Snyder took notes which indicated that: Snyder knew that 60,000 shares (representing about 90% of the outstanding shares) of State Die stock were in escrow; Snyder was aware that the title to the real property of State Die, which was part of the consideration in the merger with Extra Production, was held by an unrelated leasing company and, thus, not transferable; Snyder contemplated obtaining State Die's most recent annual report, a corporate certificate of good standing, tax returns, etc. (although he never obtained any such documents); and Snyder knew that State Die had substantial debts, including one $194,000 bank debt. Snyder did not disclose any of this information in the amended offering circular. Taking this evidence in the light most favorable to the plaintiffs, a reasonable jury could find that Snyder knew certain information in the amended offering circular was misleading and that Snyder had a duty to disclose that information to investors such as the plaintiffs under 10(b)/rule 10b–5. Furthermore, Snyder's participation in editing the information statement prepared for the purpose of marketing SDE's stock in the OCT market, and in drafting an opinion letter for SDE's board of directors regarding the tradeability of common stock, while not overwhelming, also implicated him in the alleged fraudulent scheme.

The proper standard for determining whether the plaintiffs justifiably relied on a misrepresentation or omission is a recklessness standard. *Zobrist v. Coal–X, Inc.*, 708 F.2d 1511, 1516 (10th Cir.1983).

A number of factors are considered in determining whether reliance on allegedly fraudulent documents was reckless, including:

(1) The sophistication of expertise of the plaintiff in financial and securities matters; (2) the existence of long standing business or personal relationships; (3) access to the relevant information; (4) the existence of a fiduciary relationship; (5) concealment of the fraud; (6) the opportunity to detect the fraud; (7) whether the plaintiff initiated the stock transaction or sought to expedite the transaction; and (8) the generality or specificity of the misrepresentations.

*Id.* (citations omitted). *See also Kennedy v. Josephthal & Co.*, 814 F.2d 798, 804 (1st Cir.1987). In the case of omission or non-disclosure of material facts, the element of reliance on the part of the plaintiffs may be presumed. A defendant may rebut this presumption by proving, by a preponderance of the evidence, that even if the material facts had been disclosed, plaintiffs' decision to purchase securities would not have been different. *See Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); *Finkel v. Docutel/Olivetti Corp.*, 817 F.2d 356, 359 (5th Cir.1987), *cert. denied*, 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988).

Viewing the evidence in the light most favorable to plaintiffs, we find that a reasonable juror could conclude that plaintiffs did not act recklessly in relying on the alleged misrepresentations and omissions. None of the plaintiffs had any special knowledge of the SDE shell transaction, had access to information which would have revealed the fraud, personally knew or had a fiduciary relationship with the defendants, or otherwise had the upper hand in negotiating for the purchase of the debentures. Further, as to the alleged omissions of fact, a jury could reasonably find from this evidence that plaintiffs have failed to rebut the presumption of reliance.

### 3. *Expert Testimony*

The Snyder defendants argue that the district court improperly allowed plain-

tiffs' expert to testify concerning the requirements of various securities laws. In considering this argument, we remain aware that a trial court's decision to allow an expert to testify on a given matter will not be disturbed absent an abuse of discretion. *Davis v. Combustion Engineering, Inc.,* 742 F.2d 916, 919 (6th Cir.1984). Further, the introduction into evidence of improper expert testimony is subject to the "harmless error" rule. *Id.* at 920; Fed.R. Civ.P. 61.

This Court has repeatedly held that it is impermissible for a trial judge to delegate his duty to determine the law of a case to an expert. *See United States v. Zipkin,* 729 F.2d 384, 387 (6th Cir.1984); *Torres v. County of Oakland,* 758 F.2d 147, 150–51 (6th Cir.1985). In contravention of this principle, and over the objections of the Snyder defendants' attorney, the trial judge repeatedly allowed plaintiffs' expert to testify as to the requirements of federal securities disclosure laws. Further, plaintiffs' counsel was allowed to comment on the improper expert testimony during closing arguments, increasing the likelihood that the jurors would be confused as to the correct application of law during jury deliberation. Because the jury in this case returned a verdict containing inconsistent findings of fact and clear misapplications of law, discussed *infra,* we cannot say that cross-examination adequately diminished the impact of this improper testimony, *see, e.g., Davis,* 742 F.2d at 920 (cross-examination may mitigate any potential prejudice resulting from the introduction of improper expert testimony), or that the introduction of this testimony was otherwise harmless.

B. Valentine's Motion for Judgment Notwithstanding the Verdict

Defendant Valentine appeals from adverse rulings by the district court on his motion for a JNOV on the negligent misrepresentation and Michigan Blue Sky law claims and for failure to join SDE as an indispensable party.

1. *Negligent Misrepresentation*

■ Valentine argues that, as a matter of law, he cannot be found liable for negli-

gent misrepresentation because he had no direct contact or communication with either MoTech or Behbehani. Valentine's motion for JNOV on the negligent misrepresentation claim fails for the same reason that the Snyder defendants' motion, discussed *supra,* failed; the defendants have completely misconstrued the state of negligent misrepresentation law in Michigan. The tort of negligent misrepresentation in Michigan imposes a duty in favor of all those third parties who defendant knows and should reasonably foresee will rely on the information in question. *Polgar,* 391 Mich. at 9–10, 215 N.W.2d at 152–53. There is absolutely no fiduciary or privity requirement in order to establish the element of duty under this claim.

■ The evidence showed that Valentine had intimate involvement and knowledge of the shell transaction between State Die and Extra Production. Prior to August, 1983, Valentine was the sole owner and president of State Die. In connection with the merger of State Die and Extra Production, Valentine was to receive 864,000 shares of stock and $660,000, despite the fact that State Die had incurred substantial debt and had little or no short term market for the sale of robotics products. Furthermore, given Valentine's close involvement and first hand knowledge of this shell transaction, it was not unreasonable for the jury to conclude that he participated or supplied information in the preparation of the original and amended offering circulars. The testimony concerning the August 11, 1983 meeting with defendant Snyder establishes a specific instance of Valentine providing information to an eventual editor of the amended offering circular. Finally, in a letter from a manufacturer's representative addressed to Valentine, great success was proclaimed in making projections for SDE. Plaintiffs Motech and Valentine testified that they relied on the original and/or amended offering circulars provided by SDE. Viewing the evidence in the light most favorable to plaintiffs, the district court's denial of Valentine's motion

for JNOV on the claim of negligent misrepresentation was not in error.

### 2. *Michigan's Blue Sky Law*

The jury found that Valentine violated Michigan's Blue Sky law which provides:

(a) Any person who:

. . . . .

(2) Offers or sells a security or commodity contract by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he or she did not know, and in the exercise or reasonable care could not have known, of the untruth or omission.

(3) Is liable to the person buying the security or commodity contract from his or her....

(b) Every person who directly or indirectly controls a seller liable under subsection (a), every partner, officer, or director of such a seller, every person occupying a similar status or performing similar functions, every employee of such a seller who materially aids in the sale, and every broker-dealer or agent who materially aids in the sale are also liable jointly and severally with and to the same extent as the seller, unless the non-seller who is so liable sustains the burden of proof that he or she did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist....

Mich.Comp.Laws § 451.810(a)(2)–(b). Valentine argues that JNOV should have been granted on this claim because the uncontro-

verted evidence indicated that he had no "direct contact" with the purchasers. As with Valentine's negligent misrepresentation argument, he completely misconstrues the elements necessary to recover for a Blue Sky violation under Michigan law.

■ Valentine's liability is not that of a "seller" under section 451.810(a) but as a "controlling person" under section 451.-810(b). A plain reading of Mich. Comp. Laws § 451.810(a)(2)–(b) reveals that the statute imposes liability on directors of corporations offering securities who know or reasonably should have known the information was false or misleading.[7] *See generally Rzepka v. Farm Estates, Inc.,* 83 Mich. App. 702, 269 N.W.2d 270 (1978). Under the evidence set forth above, a reasonable juror could find that Valentine knew or should have known that the statements made in the offering circulars were false and/or misleading.

■ Valentine's final argument on appeal is that, as a seller under Mich. Comp. Laws § 451.810(a)(2), SDE was an indispensable party to this lawsuit. Valentine, however, failed to raise this argument in the proceedings below. This court has repeatedly held that it will not address such issues raised for the first time on appeal. *Boddie v. Am. Broadcasting Cos.,* 881 F.2d 267, 268 n. 1 (6th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 737, 107 L.Ed.2d 755 (1990); *Yeiter v. Secretary of Health & Human Servs.,* 818 F.2d 8, 11 (6th Cir.), *cert. denied,* 484 U.S. 854, 108 S.Ct. 160, 98 L.Ed.2d 115 (1987). Thus, to the extent that Valentine's argument has any merit, it has been waived.

### C. The Jury Verdict

■ This court may, in its discretion, consider clear errors in the proceedings below in an unusual case *sua sponte* regardless of the inattentiveness of the court or the parties.

---

**7.** This second basis of liability distinguishes Mich.Comp.Laws § 451.810 from section 10(b)/rule 10b–5 under federal securities laws. Section 10(b)/rule 10b–5 requires scienter in order to impose liability. Like most states, Michigan's Blue Sky laws do not require a specific

intent to defraud. *See, e.g., Farida v. Zahar,* 50 Mich.App. 137, 212 N.W.2d 739 (1973); *State v. Gunnison,* 127 Ariz. 110, 618 P.2d 604 (1980); *Hale v. George A. Hormel & Co.,* 48 Cal.App.3d 73, 121 Cal.Rptr. 144 (1975).

In exceptional circumstances ... appellate courts, in the public interest may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise affect the fairness, integrity or public reputation of judicial proceedings.

*United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936). *See also Rodgers v. Fisher Body Div., General Motors Corp.*, 739 F.2d 1102, 1106 (6th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 821 (1985); *Finch v. Monumental Life Ins. Co.*, 820 F.2d 1426, 1432 (6th Cir.1987). The verdict returned by the jury in this case contains inconsistent findings, misapplications of the jury instructions and the relevant law, and an excessive damage award. Although some of these errors were not specifically raised by the parties at the time the verdict was returned [8] or on appeal, the scope of these errors compel us to consider *sua sponte* whether the verdict taken as a whole was a result of proper juror deliberation.

 The verdict in this case contains at least two inconsistent findings which cannot logically or legally be allowed to stand in a single verdict. First, the jurors found the Snyder defendants liable for negligent misrepresentation and, based on the same conduct, section 10(b)/rule 10b–5 violations. Second, the jurors found that plaintiffs reasonably relied on defendants' statements and omissions under section 10(b)/rule 10b–5 and, at the same time, found that plaintiffs were seventy-percent (70%) comparatively negligent in relying on those statements and omissions. The failure of the court to properly instruct the jury regarding alternative theories of liability or to return the jury for further deliberation to correct the inconsistencies in the verdict, noted below, mandates reversal of this case for a new trial.

In Michigan, negligence is defined as the failure to use reasonable care under the circumstances. *Moning v. Alfono*, 400 Mich. 425, 254 N.W.2d 759 (1977); *Clark v. Shefferly*, 346 Mich. 332, 78 N.W.2d 155 (1956). Intentional conduct is a mutually exclusive concept which exceeds and transcends negligence, giving rise to separate and distinct liability. *See Finkler v. Zimmer*, 258 Mich. 336, 241 N.W. 851 (1932); *LaCroix v. Grand T.W.R. Co.*, 379 Mich. 417, 152 N.W.2d 656 (1967); *Summerville v. Board of County Road Comm'rs*, 77 Mich.App. 580, 259 N.W.2d 206 (1977).

In contrast to the tort of negligent misrepresentation, section 10(b)/rule 10b–5 is predicated on the existence of scienter. Under *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), a defendant must have acted knowingly; that is, with a mental state embracing intent to deceive, manipulate or defraud in order to be found liable for a violation of section 10(b)/rule 10b–5. *Id.* at 205, 96 S.Ct. at 1386. In this case, the jury found that the defendants' conduct was both negligent and intentional. These are mutually exclusive acts; while the jury could have found one or the other proposition, it could not find both. *See Robertson Oil Co. v. Phillips Petroleum Co.*, 871 F.2d 1368, 1374–75 (8th Cir.1989) (findings of fraud and negligence are necessarily inconsistent). Unfortunately, the district court failed to give a jury instruction on alternative theories of liability.

 The jury also found that plaintiffs May, Behbehani and MoTech reasonably relied on Snyder's alleged misrepresentations and omissions under section 10(b)/rule 10b–5. Under section 10(b)/rule 10b–5, "[o]nly when the plaintiff's conduct rises to a level of culpable conduct comparable to that of the defendant's will reliance be unjustifiable." *Zobrist*, 708 F.2d at 1516. This test has been characterized as a "recklessness" standard. *Id.* With respect to the negligent misrepresentation claim, the jury was given a comparative

---

**8.** The trial judge was apparently unavailable at the time the jury returned with its verdict. Thus, a magistrate was delegated the task of accepting the verdict. Plaintiffs' attorneys requested that the jury be held in abeyance to give the parties an opportunity to review the verdict before dismissing the jurors. The magistrate denied the request noting that any infirmities in the verdict could be addressed in a motion for JNOV or new trial.

negligence instruction by the court. The jury ultimately determined that the defendants were thirty percent (30%) negligent in making the misrepresentations and omissions and that plaintiffs were seventy percent (70%) comparatively negligent in their purchase of debentures. These percentages indicate that plaintiffs were "more culpable" in relying on the statements than were the defendants in making the statements. Under *Zobrist, supra,* a finding of seventy-percent (70%) comparative negligence is inconsistent with a finding of reasonable reliance under section 10(b)/rule 10b–5.

There are other errors in this verdict which evidence pervasive juror confusion. For instance, although the jury had been charged on joint and several liability,[9] the jurors divided the damages among the various defendants. While a jury may choose not to apportion damages in certain instances, *see Federal Savings and Loan Ins. Corp. v. Reeves,* 816 F.2d 130, 136 (4th Cir.1987), no evidence was submitted at trial which would indicate that damages were severable among the various defendants in this case. Moreover, the jurors' decision to disregard the "joint and several liability" jury instruction resulted in a grossly excessive recovery for the plaintiffs. Plaintiff MoTech was awarded $142,000 in damages although its maximum pre-interest recovery was limited to its $25,000 investment; plaintiff May was awarded $84,000 in damages although his maximum pre-interest recovery was limited to his $25,000 investment; plaintiff Behbehani was awarded $2,231,000 in damages although his maximum pre-interest recovery was limited to his $500,000 investment. Plaintiffs were entitled only to a single satisfaction of their claims under both federal law, *Diversified Graphics, Ltd. v. Groves,* 868 F.2d 293, 295 (8th Cir.1989); *Washburn v. Kansas City Life Ins. Co.,* 831 F.2d 1404, 1410–11 (8th Cir.1987), and Michigan law, Mich. Comp. Laws § 600.2925; *see Derbeck v. Ward,* 178 Mich.App. 38, 41, 443 N.W.2d 812 (1989). However, plaintiffs' cumulative award amounted to more than four times their total investments.[10] It should also be noted that the damage award might have been impacted by the jurors erroneous attempt to reduce the total recovery by plaintiffs' comparative negligence on the federal and state *securities* claims.

Although it is sometimes possible for a court to modify an improper verdict by inferring the intentions of the jury, we decline to engage in such speculation in this instance. The numerosity and weight of the errors here makes reconciliation of any portion of this verdict impossible. *Cf. Jarvis v. Commercial Union Assur. Cos.,* 823 F.2d 392, 395 (10th Cir.1987) (when only confusion reigns in a jury verdict, the verdict must be set aside). This case is REVERSED and REMANDED for a new trial consistent with this opinion.

## APPENDIX

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MOLECULAR TECHNOLOGY CORPORATION, an Ohio corporation, et al.,

Plaintiffs Civil Action Nos.

9. The Jury was instructed by the district court: "If your verdict is for the plaintiff[s] against more than one defendant, you must not divide the damages among them, but you shall return a verdict in one single sum against those defendants whom you find to be liable."

10. In addition, the cumulative award should have been reduced by the $110,000 in settlement received from other defendants prior to trial.

| | |
|---|---|
| v | 84–CV–73229–DT |
| FIRST NATIONAL | and |
| SECURITIES CORPORATION, | 85–CV–75321–DT |
| a Michigan corporation | |
| et al., and AL VALENTINE, | HON. BERNARD A. |
| et al., | FRIEDMAN |
| Defendants. | |

## VERDICT FORM

DATED: ___March 27, 1989___

Please follow the directions carefully in completing this verdict form.

1. RULE 10b–5: Do you find that Rule 10b–5 of the federal securities laws was violated by any or all of the defendants James Fors, Jack Hunter, Donovan Snyder/Moss & Wilkins and Al Valentine?

___Yes___ (YES or NO)

If you have answered YES, please indicate which of the defendants violated Rule 10b5:

| JAMES FORS | _Yes_ (YES or NO) | All plaintiffs |
|---|---|---|
| JACK HUNTER | _No_ (YES or NO) | |
| DONOVAN SNYDER/ | | Yes for Behbehani |
| MOSS & WILKINS | _Yes_ (YES or NO) | Yes for Molecular Tech. |
| | | No for Michael May |
| AL VALENTINE | _No_ (YES or NO) | |

2. NEGLIGENT MISREPRESENTATION: Do you find that there is liability for negligent misrepresentation on the part of any or all of the defendants, James Fors, Jack Hunter, Donovan Snyder/Moss & Wilkins, and Al Valentine?

___Yes___ (YES or NO)

If you have answered YES, please indicate which of the defendants is liable for negligent misrepresentation:

| | | Yes for Behbehani |
|---|---|---|
| JAMES FORS | _Yes_ (YES or NO) | Yes for Molecular Tech. |
| | | No for Michael May |
| JACK HUNTER | _No_ (YES or NO) | |
| DONOVAN SNYDER/ | | Yes for Behbehani |
| MOSS & WILKINS | _Yes_ (YES or NO) | Yes for Molecular Tech. |
| | | No for Michael May |
| | | Yes for Behbehani |
| AL VALENTINE | _Yes_ (YES or NO) | Yes for Molecular Tech. |
| | | No for Michael May |

3. CONTRIBUTORY NEGLIGENCE: Do you find that any or all of the plaintiffs contributed as a proximate cause to their own damages?

___Yes___ (YES or NO)

If you have answered YES, please indicate the percentage that each plaintiff contributed to their own damages:

JAFAR BEHBEHANI 70 %

MICHAEL MAY 75 %

MOLECULAR TECHNOLOGY CORP, INC. 70 %

4. RICO: Do you find that there was a violation of the Racketeering Influenced and Corrupt Organizations Act (RICO) by any or all of the specified defendants?

 Yes (YES or NO)

If you have answered YES, please indicate which of the following defendants is liable under RICO:

JAMES FORS Yes (YES or NO) All three plaintiffs

JACK HUNTER No (YES or NO)

AL VALENTINE No (YES or NO)

5. SECTION 12(2): Do you find that Section 12(2) of the Securities Exchange Act was violated by any or all of the defendants James Fors, Jack Hunter, or Al Valentine?

 Yes (YES or NO)

If you have answered YES, please indicate which of the defendants is liable for violating Section 12(2):

JAMES FORS Yes (YES or NO) All three plaintiffs

JACK HUNTER No (YES or NO)

AL VALENTINE No (YES or NO)

6. FAILURE TO REGISTER UNDER FEDERAL SECURITIES LAW: Do you find that there was a violation of the Federal Securities Law for failure to register the debentures on the part of any or all of the defendants James Fors, Jack Hunter or Al Valentine?

 No (YES or NO)

If you have answered YES, please indicate which of the defendants is liable for violation of the Federal Securities Law for failure to register the debentures:

JAMES FORS _____ (YES or NO)

JACK HUNTER _____ (YES or NO)

AL VALENTINE _____ (YES or NO)

7. FAILURE TO REGISTER UNDER STATE BLUE SKY LAWS: Do you find that there has been a violation of the State Blue Sky Securities Laws for failure to register the debentures by any or all of the defendants, James Fors, Jack Hunter or Al Valentine?

 No (YES or NO)

If you have answered YES, please indicate which of the defendants is liable for violation of the State Blue Sky Securities Laws for failure to register the debentures.

JAMES FORS _____ (YES or NO)

JACK HUNTER _____ (YES or NO)

AL VALENTINE _____ (YES or NO)

8. MISREPRESENTATIONS OR OMISSIONS UNDER STATE BLUE SKY LAWS: Do you find that there has been a violation of the Michigan Blue Sky Laws regarding misrepresentations and omissions by any of the defendants James Fors, Jack Hunter or Al Valentine?

 Yes (YES or NO)

If you have answered YES, please indicate which of the defendants is liable for violation of the State Blue Sky Laws regarding misrepresentations and omissions.

JAMES FORS Yes (YES or NO) Yes for all three plaintiffs

JACK HUNTER <u>No</u> (YES or NO)

 Yes for Behbehani

AL VALENTINE <u>Yes</u> (YES or NO) Yes for Molecular Tech.

 No for Michael May

If you have indicated that Jack Hunter is liable in any of the paragraphs listed above, then answer questions 9, 10, and 11. If you have not placed a YES by the name of Jack Hunter, skip questions 9, 10, and 11.

9. Do you find that First National Securities Corporation (FNSC) is liable for the actions of Jack Hunter on the basis of respondeat Superior?

 _____ (YES or NO)

10. Do you find that First National Securities Corporation (FNSC) is liable for the actions of Jack Hunter because it was a controlling person with respect to Jack Hunter?

 _____ (YES or NO)

If you have answered NO to both questions 9 and 10, go to question 12. If you have answered YES to either question 9 or question 10 or both, answer question 11 first, and then question 12.

11. Do you find that First National Monetary Group (FNMG) is responsible for the First National Securities Corporation (FNSC) on the basis of the alter ego doctrine?

 _____ (YES or NO)

12. DAMAGES: If you found liability against any of the Defendants on any of the claims, please state the amount of Plaintiffs' damages.

| Valentine | Fors | Snyder/<br>Moss & Wilkins | |
|---|---|---|---|
| $ 35,000 | 92,000 | 15,000 | Molecular Technology |
| $ 0 | 84,000 | 0 | Michael May |
| $ 598,000 | 1,502,000 | 131,000 | Jafar Behbehani |

 /s/Laird S. Johnston
 FOREPERSON

DATED: <u>March 27, 1989</u>

Supplement to Verdict Form[*] March 27, 1989

| Jury Instruction No. | Verdict Form No. | (All amounts reported in thousands of dollars) Gross Awards (Before Contributory Negligence Reductions) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Valentine | | | Fors | | | Snyder Moss/Wilkins | | |
| | | May | Behbe-hani | Mo Tech | May | Behbe-hani | Mo-Tech | May | Behbe-hani | Mo-Tech |
| 1 | 1 | – | – | – | 9 | 122 | 9 | – | 64 | 6 |
| 2 | 1 | – | – | – | 9 | 122 | 9 | – | – | – |
| 4 | 2 | – | 98 | 10 | 0 | 116 | 10 | 0 | 67 | 9 |
| 9 | 4 | – | – | – | 16 | 142 | 14 | – | – | – |
| 6 | 5 | – | – | – | 25 | 500 | 25 | – | – | – |
| 7 | 8 | – | 500 | 25 | 25 | 500 | 25 | – | – | – |
| Gross Totals: | | – | 598 | 35 | 84 | 1,502 | 92 | – | 131 | 15 |
| Plaintiffs Contr. Negl.%: | | 75% | 70% | 70% | 75% | 70% | 70% | 75% | 70% | 70% |

/s/ Laird S. Johnston
FOREPERSON

---

[*]Because the handwritten supplement to the Verdict Form could not be clearly reproduced, it has been transcribed in its entirety so that it could be included in this appendix.