284 N.J. Super. 678 (1995)
666 A.2d 211
ATLANTIC PARADISE ASSOCIATES, INC., PLAINTIFF-APPELLANT,
v.
PERSKIE, NEHMAD & ZELTNER, DEFENDANTS-RESPONDENTS, AND COOPER, PERSKIE, APRIL, NIEDELMAN, WAGENHEIM & LEVENSON, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 1995.
Decided November 2, 1995.
*680 Before Judges LANDAU, KLEINER and HUMPHREYS.
Frederick E. Popovitch argued the cause for appellant (Harmon H. Lookhoff, attorney; Mr. Popovitch and Mr. Lookhoff, on the brief).
Elliot Abrutyn argued the cause for respondents (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Joseph G. Dolan, on the brief).
The opinion of the court was delivered by KLEINER, J.A.D.
Plaintiff, Atlantic Paradise Associates, Inc., appeals from the trial court's grant of summary judgment to defendant Perskie, Nehmad & Zeltner (Perskie Nehmad), a law firm. Plaintiff charged Perskie Nehmad and a second law firm, Cooper, Perskie, April, Niedelman, Wagenheim & Levenson (Cooper Perskie) with legal malpractice. Defendant Perskie Nehmad moved for and was granted summary judgment. Subsequently, plaintiff settled its claim against codefendant Cooper Perskie and filed this appeal as of right.
In granting summary judgment to defendant, the motion judge does not appear to have considered our decision in Petrillo v. Bachenberg, 263 N.J. Super. 472, 623 A.2d 272 (App.Div. 1993). Prior to oral argument on this appeal, the Supreme Court affirmed that decision in Petrillo v. Bachenberg, 139 N.J. 472, 655 A.2d 1354 (1995). The principles enunciated in Petrillo mandate that we reverse the dismissal of plaintiff's complaint and remand this matter for trial.

I
In March 1983, U.S. Capital Corporation retained defendant Perskie Nehmad to represent it on its acquisition of a planned high rise condominium building known as the Enclave, which was to be constructed on the Boardwalk in Atlantic City. The initial *681 developer obtained preliminary site plan approval of this project in 1981. The approval was modified in January 1983. On January 12, 1982, a public offering statement was filed with the New Jersey Department of Community Affairs. The project was then sold to U.S. Capital's predecessor in title. In August 1983, defendant submitted an amended application for registration and an amended public offering statement that reflected the change in project ownership. In June 1985, a second amended public offering statement was filed that corrected typographical errors in the prior statement and reflected a change in name of the corporate owner.
The master deed, which was included in the public offering statement, provided:
Residential Units are for the use of Residential Unit Owners, their guests, tenants, licensees, invitees and other occupants. Anything in this Master Deed or in the By-Laws to the contrary notwithstanding, there shall be no restrictions on the right of a Residential Unit Owner to lease or rent the unit as otherwise allowed by law provided that all of the occupants, tenants, licensees and invitees of the Residential Unit Owner shall be subject to all the other provisions of this Master Deed and By-Laws.
The master deed also provided that "[t]here shall be no restrictions on the right of a Unit Owner to rent or lease his Unit provided that all occupants of a Unit shall at all times be subject to the provisions contained in the Master Deed and in the other Condominium Documents." Article 15 section A(3) of the public offering statement warranted that "the purchaser's unit and the common elements will substantially conform to the plans and description used as part of the sales literature."

II
In March 1986, Sam Rosenfarb was solicited at a sales office on the Boardwalk and invited to invest in the Enclave. Rosenfarb's certification filed as part of plaintiff's cross-motion for summary judgment indicated that the sale solicitation represented the Enclave as a "condotel," where residential Units could be rented on a transient, hotel-like basis. The corporate owners of the Enclave *682 marketed the condominium as a resort condominium in which units could be rented out on a daily basis. The brochure included pictures of a front desk and concierge facility.
Rosenfarb also certified that in March 1985, Host Management Corporation, a hotel/resort operator, was hired as a rental agent for condominium unit owners who wanted to rent their units on a transient basis. Host Management was also responsible for operating a restaurant, gift shop, front desk, and switchboard, all amenities generally associated with a hotel facility rather than a residential condominium.
Based upon that initial sales/investment solicitation, Rosenfarb, his wife, and three other couples incorporated as Atlantic Paradise Associates, Inc. Atlantic Paradise purchased four condominium units in May 1986 and an additional unit in August 1986 at a total purchase price of $1,830,000.[1]
On July 17, 1986, the City of Atlantic City cited Host Management for operating a hotel without a mercantile license, as required by municipal ordinance. Subsequently, on June 19, 1987, Host Management was found guilty of violating the municipal ordinance and was fined $50,000. Thereafter, the Enclave ceased its "condotel" operation. The loss in revenue substantially reduced plaintiff's investment return and interfered with plaintiff's ability to maintain the mortgage obligation it had incurred when it purchased the condominium units. In 1990, plaintiff's mortgagee, Chemical Bank New Jersey, N.A., instituted a mortgage foreclosure action in the Chancery Division. Plaintiff filed its answer and a third-party complaint in which it sued its seller and the law firms of Cooper Perskie and Perskie Nehmad.
*683 Plaintiff claimed that its seller committed consumer fraud when it made misrepresentations as to the hotel's nature during the course of its sale solicitation. Plaintiff settled that claim for $1,400,000 and immediately satisfied its purchase money mortgage debt. However, plaintiff still had uncompensated losses that included $430,000 on its initial purchase price, operating costs, and legal fees. As the mortgage foreclosure aspect of the litigation was resolved, plaintiff's remaining claims against the two law firms were transferred to the Law Division.
Plaintiff's claim against Perskie Nehmad asserted: (1) that Perskie Nehmad had prepared the amended public offering statement that misrepresented that residential unit owners would have the unrestricted right to lease or rent their units, including rental on a daily basis; and (2) that it had relied upon the public offering statement to its detriment.
Perskie Nehmad's motion for summary judgment was predicated on two grounds: (1) there was no factual issue as to whether the public offering statement was accurate since the Enclave could be used for residential purposes, and there was no obligation on the seller or its attorney who prepared the public offering statement to specify what uses were prohibited in a residential unit; and (2) defendant asserted that there was an absence of an attorney-client or fiduciary relationship between plaintiff and defendant.
The motion judge concluded that defendant's arguments were correct and also stressed that plaintiff had failed to present an expert opinion that the alleged dereliction of defendant constituted legal malpractice. Although plaintiff's counsel indicated that it had obtained an expert opinion which opined that defendant had been negligent but had not presented that opinion as part of its motion pleading, the court did not request a copy of the expert report and proceeded to grant summary judgment to defendant.
In Petrillo, the Supreme Court addressed for the first time the issue of the legal duty owed by attorneys to nonclients. Specifically, plaintiff alleged that a misleading copy of a percolation test *684 report prepared by seller's attorney induced her to sign a contract to purchase property. Id. at 474, 655 A.2d 1354. In reversing the trial court's dismissal of that claim, the Court extended its prior decision in Rosenblum v. Adler, 93 N.J. 324, 461 A.2d 138 (1983) which relaxed the privity requirement in a case involving an accounting firms's negligent audit of a corporation's financial statements upon which stock purchasers had relied. In Rosenblum, the Court held that an auditor owed a duty to all reasonably foreseeable recipients of information supplied for proper business purposes, provided that the recipient relied on the statement in pursuit of those business purposes.[2]Id. at 352, 461 A.2d 138. In reaching the decision in Petrillo, the court placed special emphasis upon Molecular Technology Corp. v. Valentine, 925 F.2d 910 (6th Cir.1991), wherein the Sixth Circuit determined that a lawyer who prepared a private offering statement for his client's corporate debentures owed a duty of care to potential investors whom the attorney knew or should have known would rely on the statement. Id. at 915-17.
After thoroughly reviewing other New Jersey decisions subsequent to Rosenblum, and analyzing Section 73 of the proposed Restatement of the Law Governing Lawyers (Tentative Draft No. 7, 1994) and Section 552 of the Restatement (Second) of Torts (1977), the court concluded that an attorney may be responsible to a nonclient if the attorney "could foresee that the nonclient would rely on his services." Petrillo, 139 N.J. at 485, 655 A.2d 1354.
In this case, defendant is charged with malpractice in the preparation of amendments to a public offering statement. N.J.S.A. 45:22A-28a provides that a "public offering statement shall disclose fully and accurately the characteristics of the development ... and shall make known to prospective purchasers all unusual or material circumstances or features affecting the development." *685 A public offering statement must disclose "significant terms of any encumbrances, easements, liens, and restrictions, including zoning and other regulations, affecting such lands and each unit...." N.J.S.A. 45:22A-28a(4)(a).
In Petrillo, the Court stated that in determining the scope of an attorney's duty to third parties in preparing certain documents, courts must look at the "objective purpose of documents such as ... offering statements, and the extent to which others foreseeably may rely on them." Id. at 485, 655 A.2d 1354. The Court determined that when the defendant attorney had extracted information from existing percolation test reports, created a composite report, and delivered the report to a real estate broker, he should have known that the broker might deliver the report to a prospective purchaser such as plaintiff in that case, who in turn might reasonably rely on the misleading information in the report. Id. at 486, 655 A.2d 1354.
Reliance by purchasers on the content of a public offering statement is foreseeable. If plaintiff's certification that the sellers were marketing this condominium as a "condotel" is correct, any known restriction which would prohibit its use as a "condotel" should have been included within the public offering statement. Plaintiff's certification asserted facts demonstrating that defendant knew that the Enclave owners had not obtained a mercantile license from Atlantic City which would permit transient rentals of condominium units.
The motion judge, citing Albright v. Burns, 206 N.J. Super. 625, 503 A.2d 386 (App.Div. 1986) (holding that an attorney owes a fiduciary duty to persons, though not strictly clients, who he knows or should know rely on him in his professional capacity), correctly concluded that the mere absence of an attorney-client or fiduciary relationship is no longer a basis to deny a legal malpractice claim asserted against a law firm by a nonclient. The court erroneously held, however, that plaintiff was required to provide an expert opinion as to what information must be included within a public offering statement prepared or amended by an attorney *686 and opining that the omission of facts known by the preparing attorney constitutes legal malpractice.
Since plaintiff had not provided the court with an expert opinion supportive of its claim of legal malpractice, the motion judge concluded that there was no genuine issue of material fact presented in opposition to defendant's expert opinion that defendant had not acted negligently, and granted summary judgment in favor of defendant.
In requiring plaintiff to establish defendant's duty in this regard through expert opinion, the judge erred. The question of legal duty owed to the buyer is a question of law. Petrillo, 139 N.J. at 479, 655 A.2d 1354. Construing the affidavit most favorably to the plaintiff, as required by summary judgment principles, defendant would have had a duty to plaintiff as a matter of law.
Additionally we note that even if the motion judge were correct as to the need for such an expert opinion, he should have requested to read plaintiff's expert report, when told that plaintiff had one.
"A trial court should consider all of the information it knows to be available when evaluating claims for summary judgment. It should assure itself that the parties have had a reasonable opportunity to obtain and submit material information to the court...." Ziegelheim v. Apollo, 128 N.J. 250, 264, 607 A.2d 1298 (1992). In response to the court's observation that plaintiff had failed to provide an expert opinion, plaintiff's counsel immediately advised the court that it in fact had such an opinion but had omitted the same from plaintiff's responding papers. Although informed of the existence of an expert opinion, the court proceeded to render its decision.[3]

*687 I support that, for whatever strategic purpose, the plaintiff has chosen not to present their experts' reports for purposes of this motion; but I think in the absence of those experts' reports I think I have to grant the Cross-Motion for Summary Judgment on behalf of the Perskie Nehmad firm because there is no factual issue, as far as I can tell, as to whether or not the public offering statement was accurate.
We reverse the decision granting summary judgment to defendant Perskie Nehmad and remand this matter to the Law Division for trial.
NOTES
[1] Defendant Cooper Perskie represented plaintiff in the purchase of those condominium units. Plaintiff's allegation of legal malpractice referencing that law firm pertain to legal services performed in conjunction with that purchase. It charged that those attorneys were negligent in failing to ascertain and inform plaintiff that the Enclave was not zoned or licensed to be operated as a "condotel."
[2] Subsequent to the Rosenblum decision, the New Jersey State Legislature enacted N.J.S.A. 2A:53A-25, which limits accountants' liability to third parties for negligent acts. This statutory limitation does not extend to attorneys or other professionals. Petrillo, 139 N.J. at 485, 655 A.2d 1354.
[3] The record implies that plaintiff's expert opinion had been previously provided to defendant's counsel. That expert opinion has been included as an exhibit in plaintiff's appendix. Our review of the expert opinion shows that were this a matter for factual, rather than legal determination, a question of fact would have been presented thereby.