**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4357-16T4

ROBERT HULL and POINT
PLEASANT LANDCO, LLC,

      Plaintiffs-Appellants,

v.

MICHAEL T. COLLINS, ESQ.,
LAW OFFICES OF MICHAEL
T. COLLINS, PC, PATRICK J.
SPINA, ESQ., PATRICK J. SPINA,
ESQ., PC, SODINI & SPINA, LLC,
DAY PITNEY LLP (f/k/a PITNEY
HARDIN LLP), CAMILLE V.
OTERO, ESQ., FRANCES B. STELLA,
ESQ., JAMES SHERMAN, ESQ., and
SHERMAN LAW OFFICES LLC,

      Defendants-Respondents,

and

EDWARD FEUREY, ESQ., MARY JANE
LIDAKA, ESQ., BERRY SAHRADNIK
KOTZAS & BENSON, PC, CARL W.
ERLER, ESQ., and KEVIN RIORDAN, ESQ.,

      Defendants.

_____

Argued December 17, 2018 – Decided April 5, 2019

Before Judges Haas, Sumners and Mitterhoff.

On appeal from Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2096-14.

Raphael M. Rosenblatt argued the cause for appellants (Rosenblatt Law, PC, attorneys; Raphael M. Rosenblatt, of counsel and on the brief).

Robert E. Rue argued the cause for respondents Michael T. Collins, Esq., and Law Offices of Michael T. Collins, PC.

Rowena M. Duran argued the cause for respondents Patrick J. Spina, Esq., and Patrick J. Spina, Esq., PC, (Vasios, Kelly & Strollo, PA, attorneys; Rowena M. Duran, of counsel and on the brief; Brooke E. Anderson, on the brief).

Paul R. Marino argued the cause for respondents Day Pitney LLP, Camille V. Otero, Esq., and Frances B. Stella, Esq. (Day Pitney LLP, attorneys; Paul R. Marino and Alba V. Aviles, on the brief).

Robyn Ann Valle argued the cause for respondents James Sherman, Esq., and Sherman Law Offices, LLC.

Gregg S. Sodini argued the cause for respondent Sodini & Spina, LLC.

PER CURIAM

In this legal malpractice action, Robert Hull and Point Pleasant Landco, LLC (collectively Hull) sued their former attorneys, defendants Michael T.

Collins, Esq., Law Offices of Michael T. Collins, PC, Patrick J. Spina, Esq., Patrick J. Spina, Esq., PC,[1] and Sodini & Spina, LLC, and the attorneys who represented Robert Lewis, William Lewis and Lewis Enterprises (collectively Lewises), defendants Day Pitney, LLP, Camille V. Otero, Esq., Frances B. Stella, Esq., James Sherman, Esq., Sherman Law Offices, LLC, (collectively defendants).  Hull claimed he settled his lawsuit against the Lewises seeking compensation to remediate a contaminated property, which Hull purchased from the Lewises, for a compromised amount because his attorneys failed to adequately investigate the Lewises' financial condition and the existence of insurance coverage to pay for the cleanup, and because the Lewises' attorneys failed to disclose in discovery that there was insurance coverage to pay for the cleanup.

Hull appeals orders in which three judges, on separate occasions, entered orders granting summary judgment in favor of defendants.  Hull also appeals an order denying his motion for reconsideration of the dismissal of defendants Michael T. Collins and Law Offices of Michael T. Collins, PC (collectively

---

[1]  Hull concedes that Patrick J. Spina, Esq., PC should be dismissed from this litigation, as this entity was not in existence during the underlying litigation.

A-4357-16T4

Collins) and Sodini & Spina. Hull contends there were multiple errors that precluded his claims from being tried on the merits.

For the reasons stated below, we affirm the order dismissing the complaint against Day Pitney, Camille V. Otero, Frances B. Stella, (collectively Day Pitney), Patrick J. Spina, Esq., Patrick J. Spina, Esq., PC, (collectively Spina), and Sodini & Spina, but reverse the orders dismissing the complaint as to the other defendants, James Sherman, Esq., Sherman Law Offices, LLC (collectively Sherman) and Collins.

I.

We summarize the following facts from the record, viewing them "in the light most favorable to [plaintiff,] the non-moving party." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (citing R. 4:46-2(c)).

A.

Underlying Claims

1. Environmental Remediation Action

In June 1993, Hull purchased property – used for a coin-operated laundry, a commercial dry-cleaning business and two apartments – from the Lewises for $300,000. Prior to the purchase, plaintiffs did not conduct an environmental assessment of the property. In 2002, when Hull attempted to sell the property,

a Phase II environmental site investigation authorized by a prospective buyer revealed the property was contaminated with Perchloroethylene, a chemical heavily used in the dry cleaning industry, classified as a hazardous substance under the New Jersey Spill Compensation and Control Act (Spill Act), N.J.S.A. 58:10-23.11 to -23.24.[2]

In 2003, Hull retained the law firm of Berry, Sahradnik, Kotzas & Benson, PC (BSK&B) to prosecute all parties liable for the contamination of the property and apportion damages relating to its remediation. In January 2004, Hull filed a ten-count complaint[3] against the Lewises.

---

[2] Hull subsequently sued Wachovia Bank, N.A., as successor in interest to First Fidelity Bank, N.A. ("Wachovia"), and Environmental Waste Management Associates, Inc. ("EWMA") alleging they had a duty to notify Hull of the results of a Phase I environmental audit that had been conducted at the time Hull purchased the property and their failure to do so was a breach. The audit was a paper review and physical inspection of the property that did not reveal any environmental concerns. Hull sought damages for the cost of remediating this contamination. Wachovia and EWMA were granted summary judgment because there was no evidence in the record that Hull relied on the bank's satisfaction with the result of the Phase I environmental audit to close the transaction and that even if he had, such reliance would not be reasonable. We affirmed the orders granting defendants' motions. Hull v. Lewis, No. A-5403-07 (App. Div. June 11, 2009).

[3] The complaint alleged equitable allocation of contribution shares under the Spill Act; abnormally dangerous activities; negligence; trespass; public nuisance; private nuisance; breach of contract; relief under the New Jersey Environmental Cleanup Responsibility Act, N.J.S.A. 13:1K-6 to -13, replaced

Throughout the course of the litigation, the Lewises, represented by Day Pitney and Sherman, consistently represented to Hull's counsel that they "did not have insurance coverage for the property and were in jeopardy of having to file for bankruptcy." Hull served a document request on Lewis defendants, requesting: "[a]ll insurance policies which the Lewis[es] procured covering any occurrences at the [p]roperty . . . ." In response, Hull received Hanover Insurance Company policy no. QDQ989473 and North River Insurance Company policy no. 5234874246.

Determining it needed the assistance of an experienced environmental counsel, BSK&B retained Collins, as a consultant. In turn, Collins reviewed the documents produced by the Lewises and repeatedly asked their counsel whether they had insurance coverage for the property. Day Pitney told Collins that there was no insurance coverage, and that they were not pursuing a declaratory action against any insurance carrier because they were terminating their representation of the Lewises due to non-payment of fees.

The Lewises subsequently filed a motion for summary judgment against Hull. The judge partially granted the motion by dismissing several counts of the

_____

by the Industrial Site Recovery Act, N.J.S.A. 13:1K-6 to -14; fraud/concealment; and equitable relief.

complaint and limited Hull's claims against them to seeking contribution under the Spill Act and common law theories of negligence and breach of contract. The parties thereafter commenced settlement negotiations.

In preparation for trial, Collins, at some point, brought in Spina of Sodini & Spina to help prepare Hull's experts for trial. The Lewises had also hired Sherman to replace Day Pitney as their counsel in June 2007, two months prior to the close of discovery in September.

Unbeknownst to Hull, the Lewises at some point retained Paul Breene, Esq., of Anderson Kill & Olick PC,[4] in an effort to obtain insurance coverage against Hanover for Hull's environmental clean-up claims. Breene, on behalf of the Lewises, subsequently filed a declaratory judgement action against Hanover on March 28, 2008, seeking insurance coverage to pay for remediation of the property.[5]

A month later, Hanover gave Breene authority to settle Hull's claims against the Lewises, within the range of $200,000 to $500,000. Collins was the

---

[4] Neither Paul Breene nor Anderson Kill & Olick PC were sued by Hull.

[5] Although the record reveals that North River contributed to the eventual settlement, it is unclear why North River was not a named defendant in the declaratory judgment action.

A-4357-16T4

only Hull attorney involved in the settlement negotiations, according to both Breene and Collins.

A short three months after the declaratory judgment action was filed, the parties reached a settlement agreement in June 2008. Hull received $290,000 from the Lewises, to cover the past, present, and future remediation expenses of the property. Hull agreed to complete remediation of the property, and to hold harmless and indemnify the Lewises for any past, present or future claims and costs of any kind related to the property's contamination.

2. Settlement Enforcement of Environmental Remediation Action

For reasons unrevealed in the record, Hull never remediated the property. Consequently, in May 2010, the New Jersey Department of Environmental Protection (NJDEP) issued a directive and notice to Hull, the Lewises, and the predecessor owners of the property indicating a notice of deficiency for not remediating the property, which was served on Hull in September 2008. Hull informed the NJDEP that he did not intend to remediate the property.

In response to Hull's refusal to remediate the property, the Lewises sued Hull for the return of the settlement money, claiming he breached the settlement agreement. During the ensuing discovery, Hull discovered the Lewises'

insurance coverage funded the settlement payment, as well as the Lewises' out-of-pocket expenses, including counsel fees.

Eventually, the trial court granted summary judgment in favor of the Lewises. Hull then moved for reconsideration, arguing that at the time he entered the settlement he was led to believe the Lewises had no insurance coverage. He explained that the Lewises' insurers – Hanover, Century Indemnity,[6] and North River – paid the entirety of the settlement and their expenses. In fact, the insurers had been paying for remediation through December 31, 2015, and paid approximately $842,209.

Following denial of his motion for reconsideration, Hull appealed to this court, asserting that summary judgment was improper because he pled the affirmative defense of fraud that raised an issue of fact regarding the Lewises' failure to disclose they had insurance coverage with Hanover, which funded the settlement.

While the appeal was pending, Hull moved before this court to supplement the record to include his post-settlement finding of Hanover's integral role in the Lewises' settlement decision. Although the motion was denied without

---

[6] Beyond indicating that Century Indemnity made settlement payments on behalf of Hanover, the record is unclear of the Century Indemnity's connection with the insurance coverage issues.

prejudice, we granted a limited remand to allow Hull to file a motion with the trial court to seek relief from the summary judgment order.

Hull's Rule 4:50-1 motion was denied. In its written decision, the trial court reasoned:

> While it is true that [the] Lewis[es were] not forthcoming about their attempts to obtain insurance coverage . . . , Hull is incorrect in his statement that [the] Lewis[es] did[,] in fact[,] have insurance coverage for Hull's claims. . . . [T]he parties were never able to reconstruct all of the insurance policies or confirm the coverage was either owed or excluded . . . [the] Lewis[es] would not "have insurance coverage" unless and until they prevailed in the declaratory judgment action. At best, [the] Lewis[es'] disclosure would have put Hull on notice that coverage had been denied and that a coverage claim was being pursued.
>
> . . . .
>
> Taking Hull's argument to its logical conclusion, had he been aware of insurance carrier involvement he may had been able to obtain more money in the settlement while still refusing later to undertake remediat[ion] of the contamination.

The court determined Hull was not allowed to keep the $290,000 settlement without remediating the property, and, therefore, if he rescinded the agreement, he would be required to either return the $290,000, or affirm the contract, which would require him to remediate the property and seek money damages for the alleged deceit.

10

Hull filed an amended notice of appeal to include review of the denial of his Rule 4:50-1 motion. We affirmed the trial court's decisions, Lewis v. Hull, No. A-2537-14 (App. Div. March 2, 2017), and our Supreme Court denied a petition for certification, Lewis v. Hull, 230 N.J. 477 (2017).

B.

Legal Malpractice Claim

At the same time Hull was successfully pursuing claims against the Lewises, he filed the within malpractice action against defendants in June 2014. Hull alleged the environmental claim against the Lewises was settled for far less than its actual value because he was unaware the Lewises had insurance coverage and agreed to settle without full knowledge of their actual financial situation. Thereafter, three different trial judges (designated first, second and third judge) entered separate orders granting summary judgment dismissing claims against defendants.

With regards to Day Pitney and Sherman, the first judge reasoned in his oral decision that a litigant in a civil action had no cause of action sounding in malpractice against an adverse attorney, even if that adverse attorney violated the Rules of Court governing discovery, as well as the Rules of Professional Conduct 3.3 (candor to the tribunal) and 3.4 (regarding fairness to the opposing

11

party). Additionally, the judge held that the litigation privilege barred malpractice claims against Day Pitney and Sherman. Thus, absent a legal duty towards Hull, Day Pitney and Sherman were granted summary judgment dismissal of the complaint.

With regard to Spina, the second judge issued an oral decision stating Hull:

> patently fail[ed] to offer a legally sufficient expert opinion as to the deviations from standards of care as to Patrick J. Spina, and this failure is fatal to its legal malpractice claim against him.
>
> . . . .
>
> Significantly, none of the [Hull's] experts specifically speak to any breach by Spina, a defendant whose role in the underlying litigation was undoubtedly unique.

With respect to the remaining defendants, Sodini & Spina[7] and Collins, on the eve of trial, the complaint was dismissed by the third judge when she granted a motion in limine.[8] They both argued that this court's decision in Lewis

---

[7] After Collins was retained by BSK&B to consult with Hull, he brought in Sodini & Spina.

[8] The order provided in the record does not mention Sodini & Spina. However, it is clear from the parties' appeal briefs, as well as the subsequent motion for reconsideration, that the complaint against Sodini & Spina was also dismissed.

v. Hull rendered Hull's malpractice claims moot, and any further remedy he had

did not sound in legal malpractice and must be asserted directly against the

Lewises. The judge's order, in pertinent part, stated:

> . . . this matter must be dismissed with prejudice at this time to comply with [the first judge's] decision and the Appellate Division['s] decision on March 2, 2017. If the settlement agreement is vacated and Hull elects to return the money as outlined by [the first judge] and the Appellate Division, then Hull may not have any damages against his attorney Michael T. Collins, Esq., et al.

Hull's motion for reconsideration was denied.

This appeal followed.

## II.

Hull argues on appeal that the three judges each erred in granting summary

judgment to defendants. Because the respective defendants had different

relationships with Hull, we will separately address the respective summary

judgment orders. Before doing so, however, we explain the principles that guide

our analysis.

Appellate review of a ruling on a motion for summary judgment is de

novo, applying "the same standard governing the trial court[.]" Davis v.

Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014). Thus, we consider, as

the motion judge did, "'whether the competent evidential materials presented,

13

when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Id. at 406 (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).  "If there is no genuine issue of material fact," an appellate court "must then decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (citation omitted).  We accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013) (citing Zabilowicz v. Kelsey, 200 N.J. 507, 512-13 (2009)).

To prevail on a legal malpractice claim, a plaintiff must establish the following elements: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." McGrogan v. Till, 167 N.J. 414, 425 (2001).  "To establish the requisite causal connection between a defendant's negligence and plaintiff's harm, plaintiff must present evidence to support a finding that defendant's negligent conduct was a 'substantial factor' in bringing about plaintiff's injury, even though there may be other concurrent causes of the harm." Froom v. Perel, 377 N.J. Super. 298, 313 (App. Div. 2005) (quoting Conklin v. Hannoch Weisman, 145 N.J. 395, 419

(1996)). Expert testimony is required in professional malpractice claims where the issue to be resolved is so esoteric that the average juror could not form a valid judgment as to whether the conduct of the professional was reasonable. See Sommers v. McKinney, 287 N.J. Super. 1, 10 (App. Div. 1996); Butler v. Acme Markets, Inc., 89 N.J. 270, 283 (1982).

"The most common way to prove the harm inflicted by [legal] malpractice is to proceed by way of a 'suit within a suit' in which a plaintiff presents the evidence that would have been submitted at a trial had no malpractice occurred." Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C., 179 N.J. 343, 358 (2004). "The 'suit within a suit' approach aims to clarify what would have taken place but for the attorney's malpractice." Ibid. Courts, however, need not rigidly adhere to the "suit within a suit" paradigm; "flexibility [is] accorded to lawyers and judges to limn an appropriate procedure in each case based on the facts and on the claim[]." Id. at 361. As in this case, "[a] flexible approach is particularly warranted in the more unusual cases where the aggrieved plaintiff in the malpractice action was the defendant in the . . . underlying action." Carbis Sales, Inc. v. Eisenberg, 397 N.J. Super. 64, 86 (App. Div. 2007) (citing Lieberman v. Employers Ins. of Wausau, 84 N.J. 325, 343 (1980)).

## A.

Hull first argues the judge erroneously granted summary judgement to Day Pitney and Sherman, attorneys for the Lewises, by determining that: 1) they owed no duty to him; 2) the litigation privilege barred his claims; and 3) no genuine issue of any material fact existed.

With regard to the litigation privilege, Hull argues that it does not include legal malpractice. Buchanan v. Leonard, 428 N.J. Super. 277, 286 (App. Div. 2012). Legal malpractice claims based on false or negligent misrepresentations by an attorney, even to an adversary, are cognizable when the attorney knows or should know that the adversary will rely on those statements. See Banco Popular v. Gandi, 184 N.J. 161,179-181 (2005); Petrillo v. Bachenberg, 139 N.J. 472, 484 (1995). Thus, Hull argues Day Pitney and Sherman are liable for legal malpractice because their "failure to supplement discovery responses in the face of counsel's knowledge of conflicting factual information [regarding the Lewises' insurance coverage] undermines the discovery process and also runs counter to R.P.C. 3.3 (candor [to the] tribunal) and 3.4 (regarding fairness to the opposing party)." Hull further maintains he had an actionable claim against Day Pitney and Sherman because he presented expert reports that supported his

16

theory that Day Pitney and Sherman withheld, masked, or disguised evidence sought after discovery.

With regard to genuine issues of material fact, Hull argues there were disputed facts regarding what Day Pitney and Sherman defendants knew about the insurance coverage prospects, the declaratory judgment action, and who funded Hull's settlement with the Lewises. Hull relies on his expert reports, which state that since Day Pitney told Collins they were not filing a declaratory action, this should have indicated to Collins that someone else might have been doing it. In addition, Hull relies on the fact that Sherman argued that there was no insurance coverage even though there were checks written out to Sherman Attorney Trust Account by Century Indemnity and North River. Accordingly, Hull maintains these factual issues should have precluded summary judgment.

In opposition, Day Pitney and Sherman argue attorney communications made during discovery are protected by the litigation privilege. See Loigman v. Twp. Comm. of Middletown, 185 N.J. 566, 589-90 (2000) (opining that attorneys need the freedom to be "'candid and objective'" in advancing their strengths of their client's case). The situation here, according to Day Pitney and Sherman, is not one of the unusual situations in which an attorney owes a duty to his clients' adversary. Green v. Morgan Props., 215 N.J. 431, 458 (2013);

A-4357-16T4

Restatement (Third) of the Law Governing Lawyers § 51 cmt. c (Am. Law Inst. 2000) (stating that "[a] lawyer representing a party in litigation has no duty of care to the opposing party . . . and hence [has] no liability for lack of care, except in unusual situations . . . ."). They argue Hull has failed to identify any act, overt or otherwise, by them that could possibly have induced Hull to rely on their representations. At the time Day Pitney responded to Hull's discovery requests in 2004, Hanover and North River had denied insurance coverage for Hull's claims and they continued to do so until they ceased representing the Lewises.

In addition, Day Pitney contends its involvement in the underlying lawsuit was too remote to impose a duty upon them, as they withdrew from the litigation a year before the settlement was reached. See Petrillo, 139 N.J. at 483-84 (stating that liability to a non-client cannot arise if the relationship between attorney and non-client is too remote). It did not file the declaratory judgment action against Hanover and, as evidenced by Breene's deposition testimony, Day Pitney was not involved in the settlement discussions with Hull's attorneys. Day Pitney also argues it is undisputed that there was no insurance coverage at the time of the settlement agreement as the judge determined that its attorneys did not conceal evidence of the existence of insurance coverage.

Considering the parties' arguments, we find the prevailing arguments favor Day Pitney's contention that it should have been granted summary judgment and Hull's contention that summary judgment should not have been granted to Sherman.

Going back to Petrillo, "we recognized that there are circumstances in which an attorney may owe a duty to a third party with whom the attorney does not have a contractual relationship." Banco Popular, 184 N.J. at 179. We have imposed third-party liability on an attorney for negligent acts or omissions when third-party reliance on such acts was foreseeable. See e.g., Atl. Paradise Assocs. v. Perskie, Nehmad & Zeltner, 284 N.J. Super. 678, 685 (App. Div. 1995) (finding cause of action by plaintiff-purchasers against law firm where plaintiffs relied on misrepresentations in a public offering statement); R.J. Longo Constr. Co. v. Schragger, 218 N.J. Super. 206, 207-08 (App. Div. 1987) (holding a cause of action existed against municipal attorneys who had prepared bid documents referencing easements the attorneys had failed to obtain); Albright v. Burns, 206 N.J. Super. 625, 632-33 (App. Div. 1986) (holding attorney liable to decedent's estate where attorney knowingly facilitated improper transactions); Stewart v. Sbarro, 142 N.J. Super. 581, 586-87 (App. Div. 1976) (holding a cause of action existed against attorney for buyers of a corporation where attorney agreed but failed to obtain the buyers'

signatures on bond and mortgage indemnifying sellers against liability for corporate debt).

On the other hand, in Hewitt v. Allen Canning Co., 321 N.J. Super. 178, 186, (App. Div. 1999), we found no duty where a non-client did not rely on a law firm's discovery violation and no misrepresentation had occurred. And in Banco Popular, the Court found there was no liability for negligence on the part of an attorney who had assisted a client in transferring assets "in order to place them beyond [a creditor]'s reach." 184 N.J. at 167. Nonetheless, the Court acknowledged that an invitation to rely and reliance are the linchpins of attorney liability to third parties. Id. at 181.

We conclude Day Pitney and Sherman's discovery responses are not protected by the litigation privilege because looking at the facts in the light most favorable to Hull those facts are sufficient to establish malpractice. Hull settled its claims against the Lewises on the mistaken belief that they did not have insurance coverage and that they had to pay the settlement from their own resources.

With regard to Day Pitney, we conclude the judge properly dismissed the complaint on summary judgment, as Hull did not establish a prima facie claim of negligent misrepresentation against it. Day Pitney initially transmitted the discovery response that no insurance coverage had been identified, but that the Lewises were

trying to locate information.  The interrogatories answers Day Pitney forwarded to Hull's counsel disclosed that, "Lewis has been unsuccessful in locating any insurance policies pre-1986 with respect to the property . . . and accordingly has not been able to assert any claims for potential coverage against any insurance carriers."  Up until the time Day Pitney withdrew as counsel, no insurance company had indicated it was responsible for covering the remediation costs at the property.  This fact was confirmed by an email sent by Breene to Day Pitney, six months after it withdrew, stating "[w]e have not yet secured any agreement on the part of any insurance company to pay any part of the defense or indemnity."  Therefore, during Day Pitney's involvement in the matter, no misrepresentation regarding the status of the property's insurance coverage was made to Hull's counsel.  Accordingly, we affirm the judge's order dismissing the complaint against Day Pitney.

With respect to Sherman, we see it differently.  Sherman replaced Day Pitney and was representing the Lewises for approximately eight months when Breene filed the declaratory judgment action against Hanover for the Lewises.  Sherman may be liable for the Lewises' insurance coverage discovery responses that Sherman knew were untruthful or misleading.  Because discovery was still open when Sherman substituted into the case, Sherman had the continuing obligation under Rule 4:17-7,

21

to amend the Lewises' discovery responses that were contradicted by information within its knowledge. Such was the situation with respect to the insurance coverage declaratory judgment action and subsequent agreement by the insurers to fund the Lewises' settlement contribution and pay for their attorney fees and costs. The fact that Sherman was not involved in the settlement discussions with Hull does not negate its representations or failure to amend discovery responses that insurance coverage was available for environmental claims against the property. As noted, since Hull was potentially led to believe there was no insurance coverage, his negotiating position was compromised. Hull relied upon this misrepresentation, in deciding to settle for $290,000, a far cry from its projected clean-up costs of $782,294.42. Thus, summary judgment should not have been granted to Sherman.

B.

Hull contends that the third judge erred in granting summary judgment to his former attorneys Collins and Sodini & Spina solely based on this court's decision in Lewis v. Hull, which directed plaintiffs to either rescind or affirm the underlying settlement agreement, and if rescinding, to return the $290,000 settlement payment. Hull maintains that because the decision did not address the conduct of the attorneys or any allegations of malpractice, it does not preclude, bar, or otherwise limit his ability to prosecute a legal malpractice

A-4357-16T4

claim. Even if the decision bars recovery of the settlement payment, according to Hull, he should be able to recover the cost of environmental consultants, lost value of property and attorney's fees for his ex-counsels' less than zealous representation under Saffer v. Willoughby, 143 N.J. 256, 272 (1996). Hull also argues the judge procedurally erred in permitting a motion in limine to be used, on the eve of the trial, as a dispositive motion to dismiss his claims against Collins and Sodini & Spina on the merits. See Seoung Ouk Cho v. Trinitas Reg'l Med. Ctr., 443 N.J. Super. 461, 471 (App. Div. 2015) (speaking to the impropriety of utilizing a motion in limine as a means to grant a dismissal on the merits).

In opposition, Collins and Sodini & Spina contend Hull's claims were properly barred by the judge's application of Lewis v. Hull based on the doctrines of res judicata and collateral estoppel. Under the former, the attorneys maintain Hull's allegations of malpractice were determined to finality in Lewis v. Hull between the same parties or their privies and cannot be relitigated as the malpractice claims have a common nucleus of operative fact – the environmental cleanup of the property – as in the 2004 litigation in Hull v. Lewis and Lewis v. Hull. Roberts v. Goldner, 79 N.J. 82, 85 (1979).

With regards to collateral estoppel, Collins and Sodini & Spina contend the doctrine applies to bar Hull's malpractice claims because the issue was decided by the prior judges who determined that Hull did not have viable malpractice claims against other attorneys. See Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521 (2006).

Collins and Sodini & Spina further contend that because Lewis v. Hull affirmed the trial court's decision that Hull's breach of the settlement agreement by not cleaning up the property makes it unenforceable, Hull's malpractice complaint is now moot as there is no settlement. They reason now that the settlement agreement is rescinded, the parties are restored back to square one, their pre-settlement positions, thereby only affording Hull the recourse of pursuing a remedy against the Lewises for the alleged environmental contamination of the property.

Sherman makes the same arguments to support his position that the two decisions bar Hull's malpractice claims against him.

The argument that Lewis v. Hull bars Hull's malpractice complaint is without merit. Although the dispute involved Hull's assertion that he was deprived of discovery, which impacted settlement negotiations, there was no claim that Hull's attorney or an attorney representing an adversary deviated from

a professional standard of care that caused them damages, including litigation fees and expenses, and alleged property value loss. Thus, the judge failed to consider that vacating the settlement agreement due to Hull's non-compliance with the remediation requirement, did not bar Hull from pursuing those damages. Simply put, Lewis v. Hull did not address the issues that are integral to the resolution of Hull's malpractice claims. Thus, summary judgment should not have been granted to Collins.

With regard to Sodini & Spina, as previously noted, the order being appealed does not mention Sodini & Spina, but the parties are under the impression that the complaint against Sodini & Spina was also dismissed by that order.[9] It is important to note that the record is unclear as to what role Sodini & Spina played in the underlying litigation other than being the firm Spina was affiliated with at time he consulted on the case. Accordingly, as the complaint against Spina was dismissed, the complaint against Sodini & Spina should also have been dismissed. Therefore, we affirm the dismissal of the complaint against Sodini & Spina for other reasons than those articulated in the judge's order. See State v. DeLuca, 325 N.J. Super. 376, 389 (App. Div. 1999) (stating

---

[9] We share in that view because Sodini & Spina moved for dismissal, and the order clearly dismisses the complaint as to all remaining parties.

that an appellate court may affirm the trial judge's order for reasons other than those of the trial court).

C.

Finally, Hull argues the second judge improperly granted summary judgment in favor of Spina by determining Hull's experts failed to establish that Spina deviated from acceptable standards of care for the unique role he played in assisting Collins by preparing experts for trial. Specifically, Hull maintains his experts opined that Spina breached his duty of care relative to the assessment of the discovery, insurance coverage and settlement. Alternatively, Hull asserts that if Spina did not have an obligation to investigate, he should have refrained from recommending Hull settle his claims against the Lewises. We are unpersuaded.

We agree with Spina that the judge was correct in finding Hull's expert did not establish any acts or omissions committed by Spina, that proximately caused Hull damages. Spina was retained by Collins to only help prepare Hull's experts for trial; he was not involved with discovery or settlement negotiations. The judge stated in his written decision:

> [A]lmost the entirety of [Hull's] expert reports opine that the Lewis[es'] . . . attorneys deviated from [the] standards of care by failing to disclose the insurance declaratory actions and misrepresenting the true status

A-4357-16T4

of the insurance coverage as well as being highly critical of [BSK&B] for failing to obtain an insurance reconstruction expert. Significantly, none of [Hull's] experts specifically speak to any breach by Spina, a defendant whose role in the underlying litigation was undoubtedly unique.

Based on our review of the record, we see no reason to disturb the judge's findings. We therefore affirm the dismissal of Hull's claims against Spina substantially for the reasons stated by the judge.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

27

A-4357-16T4