**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1364-22

ANTHONY P. VOLPE, M.D.,
individually and as guardian
of the person and property of
MARY T. VOLPE,

      Plaintiff-Appellant,

v.

FEENEY AND DIXON, LLP,
and JOSEPH VOLPE,

      Defendants-Respondents,

and

FRANK VOLPE, OLIVIA
VETRANO, and JOHN VOLPE,

      Defendants.

_____

        Argued October 23, 2024 – Decided November 19, 2024

        Before Judges Rose and Puglisi.

        On appeal from the Superior Court of New Jersey, Law
        Division, Bergen County, Docket No. L-3706-18.

Scott B. Piekarsky argued the cause for appellant (Offit Kurman, PA, attorneys; Scott B. Piekarsky, of counsel and on the briefs).

Benjamin J. DiLorenzo argued the cause for respondent Feeney & Dixon, LLP (Bressler, Amery & Ross, attorneys; Diana C. Manning and Benjamin J. DiLorenzo, on the brief).

Gary Wm. Moylen argued the cause for respondent Joseph Volpe.

PER CURIAM

This appeal arises from a protracted and contentious dispute among siblings. After he was appointed guardian of their mother, Mary T. Volpe, plaintiff Anthony P. Volpe, M.D., individually, and on her behalf, filed the present Law Division action for conversion and fraud against all but one of his siblings (individual defendants) and Feeney and Dixon, LLP (F&D), the law firm that represented his parents in the April 2017 sale of their home. The complaint also asserted a legal malpractice claim against F&D. Pertinent to this appeal, Mary died while the present action was pending.[1]

---

[1] Because many of the parties share the same surname, following the initial mention of their full names, we use their first names for clarity. We intend no disrespect in doing so.

Plaintiff now appeals from a December 12, 2022 Law Division order, denying reconsideration of two June 24, 2022 orders that granted the summary judgment dismissal of his amended complaint against defendants Feeney and Dixon, LLP (F&D) and Joseph Volpe.[2] The motion judge determined, upon Mary's death, plaintiff lacked standing to act on her behalf and his individual claims were not supported by the facts alleged in the complaint. The judge also rejected plaintiff's malpractice claim against F&D on the merits. After de novo review of the motion record, Comprehensive Neurosurgical, P.C. v. Valley Hosp., 257 N.J. 33, 71 (2024), we affirm.

I.

Although the motion record is voluminous, the pertinent events are easily summarized. We therefore highlight the relevant facts in the light most favorable to plaintiff as the non-moving party. See ibid.

---

[2] The December 12, 2022 order also granted the separate motions of plaintiff's brothers John Volpe and Frank Volpe, dismissing the complaint against them. We glean from the record, "the remaining claims against all remaining defendants" were dismissed when plaintiff failed to appear for the June 27, 2022 trial date. John, Frank, and Vetrano are not parties to this appeal.

A-1364-22

In June 2016, Mary and her husband, the parties' father, John Volpe, Sr., were moved into a nursing home after Mary suffered a fall in their Nutley home.[3] Thereafter, Vetrano, Joseph, and Frank moved their parents to Vetrano's home in Manahawkin. Plaintiff opposed the move, opining his mother needed full-time care.

In February 2017, Frank retained F&D to assist in the sale of his parents' Nutley home. There is no evidence to suggest F&D ever met with, or spoke to, Mary or John Sr. Instead, F&D prepared durable powers of attorney (POA), permitting Frank to facilitate the sale as his parents' attorney-in-fact. The POAs gave Frank broad power to conduct affairs on his parents' behalf, including to "sell and convey real or personal property" and "deposit and withdraw funds" from their bank accounts. The POAs are dated February 17, 2017, signed by Mary and John Sr. before two witnesses, and notarized. Frank presented the executed POAs to F&D at a later date. It is undisputed that F&D did not witness or otherwise participate in the execution of the POAs.

---

[3] John Sr. predeceased Mary while the action was pending; he was not a party to the present action. John Sr.'s full name appears in the record as John M. Volpe and John Louis Volpe. Consistent with the parties' briefs, we use John Sr. to avoid confusion with his son, defendant John Volpe, although there is no indication in the record that father and son used Sr. and Jr. designations.

Pursuant to the POAs, Frank signed the contract of sale for his parents' home on February 23, 2017, and executed the closing documents after the sale in April 2017. The proceeds were made payable to John Sr. and Mary and deposited into their joint bank account, over which Frank had access.

Concerned about Mary's healthcare while she resided in Vetrano's home, and her capacity to execute the POA, plaintiff and his brother, Michael Volpe, filed a petition for guardianship in the Chancery Division in June 2017.[4] Following receipt of the report of Mary's court-appointed attorney, in February 2018, the Chancery judge entered a judgment of incapacity and appointed plaintiff guardian of Mary and her estate. Among other provisions, the guardianship judgment revoked Mary's prior POAs and permitted plaintiff to file a Medicaid application on Mary's behalf.

Plaintiff filed his initial complaint in May 2018 and an amended complaint the following month, adding factual allegations. Plaintiff asserted the individual defendants misappropriated "large sums" of Mary's funds "without proper authorizations for their personal use" while Mary was living with Vetrano.

---

[4] Michael was not a party in the present action and, as such, he is not a party to this appeal.

Further, plaintiff alleged F&D failed to verify the POAs' validity, enabling the individual defendants to sell their parents' home.

In January 2019, plaintiff applied for Medicaid benefits on Mary's behalf. Medicaid approved the application in September 2020, but placed a $108,168 lien on Mary's estate. Plaintiff agreed to make a voluntary payment toward the lien if the present lawsuit resolved in his favor.

On March 31, 2021, Mary died leaving no assets in her estate. Thereafter, plaintiff sought to probate a will Mary executed on March 24, 1997. The will bequeathed Mary's estate to John Sr., but provided should John Sr. predecease Mary, her estate would pass to all her children. Unbeknownst to plaintiff, twenty years later, on March 23, 2017, Mary executed another will: revoking the 1997 will; removing plaintiff and Michael as beneficiaries; removing plaintiff as an executor; and naming Joseph, Frank, John Jr., and Vetrano as co-executors of Mary's estate.

Plaintiff filed a complaint in probate court in August 2021, seeking among other relief, to: serve as the temporary administrator of Mary's estate; continue the present lawsuit; invalidate the 2017 will based on Mary's "lack of capacity or as the product of undue influence"; and admit the 1997 will to probate.

6

Having failed to prevail in the will contest, plaintiff is not the personal representative of Mary's estate.

After the close of discovery, F&D and Joseph separately moved for summary judgment, asserting Mary's death terminated plaintiff's standing to pursue any claims on his mother's behalf as the guardianship terminated as a matter of law upon her death. F&D further argued it owed no duty to plaintiff.

Following oral argument, the motion judge issued cogent statements of reasons that accompanied the June 24, 2022 orders granting summary judgment. The judge squarely addressed the issues raised in view of well-established legal principles. The same judge thereafter denied plaintiff's reconsideration motion after hearing argument. The judge issued a well-reasoned rider and memorializing order on December 12, 2022.[5]

On appeal, plaintiff maintains he had standing to sue on Mary's behalf because as her guardian, he was obligated to continue "to account for [her] funds and assets" after her death according to N.J.S.A. 3B:12-64(b), especially in view of the Medicaid lien against her estate. He also argues he had standing to sue

---

[5] Joseph moved to intervene as co-executor of Mary's estate to pursue the legal malpractice claim against F&D, but his motion was denied. Joseph did not appeal from the January 4, 2023 order. The Estate and its personal representatives are not parties to this appeal.

F&D in his individual capacity because "it was foreseeable" he would rely on F&D's advice or be affected by the firm's work. Citing various factual "disputes" among the parties, plaintiff claims summary judgment was prematurely granted. Plaintiff asserts no specific challenges to the judge's reconsideration determination.

We review a decision on summary judgment employing the same standard as the motion court. We therefore review the record to determine whether there are material factual disputes and, if not, whether the undisputed facts viewed in the light most non-moving party, nonetheless entitle the movant to judgment as a matter of law. Comprehensive Neurosurgical, 257 N.J. at 71; see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 541 (1995); R. 4:46-2(c). We owe no deference to the trial court's legal analysis. Comprehensive Neurosurgical, 257 N.J. at 74.

Based on our de novo review of the record, we reject plaintiff's argument that he had standing to pursue the present action following Mary's death. Simply stated, a guardian's authority and responsibility terminate upon the death of the ward. N.J.S.A. 3B:12-64(a)(2); see also Kingsdorf v. Kingsdorf, 351 N.J. Super. 144, 153 (2002) (concluding the guardian had standing to file a divorce complaint on the ward's behalf, but lacked standing to sign the final consent

judgment of divorce because the ward's death during the pendency of the litigation terminated the guardianship).

Further, following the ward's death, the decedent's personal representative – not the guardian – is conferred with the same standing as the decedent to sue and be sued on all claims that survive death. N.J.S.A. 3B:10-25; see also N.J.S.A. 3B:1-2 (including executors and administrators within the definition of "[p]ersonal representative"). We conclude, as did the motion judge, plaintiff – who was not appointed Mary's personal representative following her death – lacked standing to pursue her complaint upon her death.

Nor are we convinced by plaintiff's contention that his duty as guardian to account for Mary's assets after her death conferred a right to pursue the complaint, individually and on her behalf, notwithstanding the termination of the guardianship by operation of law. A guardian's powers and duties following the ward's death are limited. Specifically, "termination does not affect the guardian's liability for prior acts, nor the guardian's obligation to account for funds and assets of the ward." N.J.S.A. 3B:12-64(b). "Upon termination of the guardianship, pursuant to N.J.S.3B:12-64 the guardian, after the allowance of his final account, shall pay over and distribute all funds and properties of the former ward or to the estate of the former ward in accordance with the order of

the court." N.J.S.A. 3B:12-63; see also Gay v. Stengel, 61 N.J. Super. 411, 420 (App. Div. 1960) (holding the death of the ward "terminated the powers and duties as guardian, except to account and turn over to [the ward's] personal representative the balance remaining in his hands after the accounting had been approved by the Chancery Division").

Although Mary's death did not absolve plaintiff from liability for a final accounting and distribution of her remaining funds to her personal representative under N.J.S.A. 3B:12-64(b), the statute did not confer authority to pursue the present action as her guardian. Nor did plaintiff's obligation to account to Medicaid on Mary's behalf during the guardianship confer an individual right of standing upon plaintiff following Mary's death. Any claim to recover or expend funds must be made by the executor or personal representative of Mary's estate. See N.J.S.A. 3B:10-25; N.J.S.A. 3B:1-2; see also R. 4:26-1 (stating the "real party in interest" must bring a claim before the court).

We also reject plaintiff's argument that he had standing to sue F&D in his individual capacity because "it was foreseeable" he would rely on F&D's advice or be affected by the firm's work. Similar to the motion judge, we conclude the record is devoid of any evidence establishing a duty of care by F&D.

A-1364-22

To present a prima facie legal malpractice claim, a plaintiff must establish "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of damages the damages claimed by the plaintiff." Jerista v. Murray, 185 N.J. 175, 190-91 (2005) (quoting McGrogan v. Till, 167 N.J. 414, 425 (2001)). The imposition of a duty to a non-client is construed narrowly. See Green v. Morgan Props., 215 N.J. 431, 458 (2013) (holding "the grounds on which any plaintiff may pursue a malpractice claim against an attorney with whom there was no attorney-client relationship are exceedingly narrow").

Whether a legal duty exists is a matter of law for the court to decide. Petrillo v. Bachenberg, 139 N.J. 472, 479 (1995). In making this determination, "the court must identify, weigh and balance the following factors: the relationship of the parties; the nature of the attendant risk; the opportunity and ability to exercise care; and the public interest in the proposed solution." Davin, L.L.C. v. Daham, 329 N.J. Super. 54, 73 (App. Div. 2000); Est. of Fitzgerald v. Linnus, 336 N.J. Super. 458, 473 (App. Div. 2001) (finding that whether a duty extends to a non-client is "necessarily fact-dependent"). The ultimate question is one of fairness. Innes v. Marzano-Lesnevich, 435 N.J. Super. 198, 213 (App. Div. 2014).

We have recognized "[p]rivity between an attorney and a non-client is not necessary for a duty to attach 'where the attorney had reason to foresee the specific harm which occurred.'" Ibid. (quoting Est. of Albanese v. Lolio, 393 N.J. Super. 355, 368-69 (App. Div. 2007)). In limited circumstances, a duty to a non-client has been found when the attorney knew, or should have known, the non-client would rely on the attorney's representation and the non-client was "not too remote from the attorneys to be entitled to protection." Ibid. (quoting Petrillo, 139 N.J. at 483-84).

For example, we have imposed third-party liability on attorneys for negligent acts or omissions when third-party reliance on such acts was foreseeable. See, e.g., Atl. Paradise Assocs., Inc. v. Perskie, Nehmad & Zeltner, 284 N.J. Super. 678, 685-86 (App. Div. 1995) (recognizing a cause of action by the plaintiff-purchasers against the defendant law firm where the plaintiffs relied on misrepresentations in public offering statement). As the Court has made clear, however, if the attorney does nothing to induce reliance by a third party, there is no relationship between the attorney and non-client. Banco Popular N. Am. v. Gandi, 184 N.J. 161, 181 (2005).

In the present matter, there is no basis for plaintiff's legal malpractice claim against F&D. The law firm neither represented plaintiff nor undertook

any action to induce his reliance in the performance of its representation of Mary. At deposition, plaintiff acknowledged he never spoke with anyone from F&D. He was not involved in the sale of the Nutley home and he had no interest in the sale proceeds, which were paid to Mary and John Sr. The harm plaintiff alleges in his individual capacity are costs for Mary's medical care, which he rendered voluntarily, and legal fees in the ensuing actions he brought. As plaintiff is "too remote" from F&D "to be entitled to [their] protection," Lolio, 393 N.J. Super. at 368-69, we conclude as did the motion judge "at no point in time did F&D owe a legal duty to [p]laintiff."

To the extent not addressed, any remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1364-22